UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

WILMER JOSE RUIZ-QUINTINEZ,

        Petitioner,

v.                                                                Case No. 2:26-cv-198-DHU-LF

DORA CASTRO, in official capacity, Facility
Administrator of Otero County Processing
Center; MARY DE ANDA-YBARRA, in
official capacity, Field Office Director of ICE's
El Paso Field Office; TODD M. LYONS,
in official capacity, Acting Director of ICE,
KRISTI NOEM, in official capacity, Secretary
of the U.S. Department of Homeland Security;
PAM BONDI, in official capacity, Attorney
General of the United States,

        Respondents.

**ORDER GRANTING PETITIONER'S EMERGENCY MOTION
FOR A TEMPORARY RESTRAINING ORDER**

THIS MATTER is before the Court on Petitioner's Emergency Motion for a Temporary Restraining Order ("TRO"). Doc. 10. For the reasons set forth below, Petitioner's request for a temporary restraining order is **GRANTED**.

**I.
PROCEDURAL BACKGROUND**

On January 7, 2026, Petitioner was detained by immigration officials while reporting to a scheduled check-in with Immigration and Customs Enforcement ("ICE"). Doc. 2 at ¶ 28. He was eventually transferred to the Otero County Processing Center in Chaparral, New Mexico, where he remains in custody. *Id.*

On January 29, 2026, Petitioner filed a verified Petition for Writ of Habeas Corpus ("Petition") with this Court. In the Petition, Petitioner seeks immediate release from immigration custody, alleging that the Government is detaining him unlawfully in violation of the Immigration and Nationality Act ("INA"), its accompanying regulations, and the Due Process Clause of the Fifth Amendment. Doc. 2 at ¶¶ 51-59. Specifically, Petitioner argues that the Government is wrongfully detaining him under 8 U.S.C. § 1225(b), which mandates detention for noncitizens in removal proceedings who are "seeking admission" to the country. *Id.* at ¶¶ 52-53. Instead, Petitioner asserts he is properly subject to the discretionary detention provisions of 8 U.S.C. § 1226(a). *Id.* at ¶ 49. Moreover, Petitioner alleges that § 1226 and its implementing regulations, as well as the Due Process Clause, entitle him to a pre-deprivation hearing before the Government can revoke Petitioner's release and re-detain him. *Id.* at ¶¶ 56-59.

Respondents were served with the Petition on January 29, 2026, Doc. 3, and on February 3, 2026, this Court ordered the Government to show cause why the Petition should not be granted within ten business days of service, Doc. 6.

On February 5, 2026, Petitioner filed an Emergency Motion for a Temporary Restraining Order, seeking immediate release from detention to alleviate the harm Petitioner and his family face due to his allegedly unlawful detention. Doc. 10 at ¶ 4. The motion argues that the last uncontested status—the *status quo ante*—is Petitioner's release. *Id.* Petitioner also asks for a preliminary injunction to the same effect to maintain his release pending final resolution of his habeas petition. *Id.*

On February 10, 2026, Respondents submitted a consolidated response to Petitioner's Petition and motion for TRO. Doc. 14. In it, the Government articulates its position that Petitioner is subject to mandatory detention under § 1225(b), pursuant to *Matter of Yajure Hurtado*. *Id.* at 2

2

(citing 29 I & N Dec. 216, 228 (BIA 2025)). Respondents acknowledge, however, that this Court has reached the opposite conclusion in cases containing substantially similar facts as those before the Court in this case. *Id.* (citing *Vega Uribe v. Noem*, 2026 WL 127621, at * 1 (D.N.M. Jan. 16, 2026); *Requejo Roman v. Castro et al.*, --F.Supp.3d--, 2026 WL 125681 (D.N.M. 2026); *Velasquez Salazar v. Dedos et al.*, --F.Supp.3d--, 2025 WL 2676729 (D.N.M. 2025)). The response does not address Petitioner's argument that he was entitled to a hearing before being re-detained.

## II.
## FACTUAL FINDINGS

Petitioner supported his Motion for TRO with the facts provided in his verified Petition and the Motion itself. *See* Docs. 2, 10. Respondents did not provide any information to dispute the factual allegations contained in the Petition and Motion. *See* Doc. 14 at 2. Accordingly, at this stage of the litigation, based on the facts provided in Petitioner's verified Petition and Motion for TRO, the Court makes the following initial findings of fact concerning Petitioner's detention:

1. Petitioner Wilmer Jose Ruiz-Quintinez is a citizen of Venezuela. Doc. 2 at ¶ 25. He entered the United States without inspection on September 29, 2023 and has resided here continuously ever since. *Id.*

2. Petitioner was apprehended at some point after entering, and he applied for asylum. *Id.* at ¶ 26. He was placed in removal proceedings and, after passing a credible fear interview, was released on his own recognizance pursuant to 8 U.S.C. § 1226. *Id.* (citing Doc. 2-3, Exhibit B).

3. After his release, Petitioner continued to report to ICE, and he filed an application for asylum in February 2024. *Id.* at ¶¶ 26-27.

3

4. On January 7, 2026, Petitioner reported to an ICE check-in and was arrested. *Id.* at ¶ 28. He was eventually transferred to the Otero County Processing Center, *id.*, where he remains detained, Doc. 2-2 at 1.

## III.
## LEGAL STANDARD

A temporary restraining order "preserve[s] the status quo [ante]" before a final decision on the merits. *Resolution Trust Corp v. Cruce*, 972 F.2d 1195, 1198 (10th Cir. 1992). The status quo ante is "the last peaceable uncontested status existing between the parties before the dispute developed." *Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 798 n.3 (10th Cir. 2019) (citation omitted).

To obtain a temporary restraining order, a petitioner "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief," and that the balance of equities and public interest weigh in his favor. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A petitioner seeking a temporary restraining order must demonstrate that "*all four* of the equitable factors weigh in [his] favor." *Sierra Club, Inc. v. Bostick*, 539 F. App'x 885, 888 (10th Cir. 2013). "The likelihood-of-success and irreparable-harm factors are 'the most critical.'" *People's Trust Fed. Credit Union v. Nat'l Credit Union Admin. Bd.*, 350 F.Supp.3d 1129, 1139 (10th Cir. 2018) (citing *Nken v. Holder*, 556 U.S. 418, 434 (2009)). Regarding irreparable harm, "[w]hen an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Planned Parenthood Ass'n of Utah v. Herbert*, 828 F.3d 1245, 1263 (10th Cir. 2016) (quotation marks and citations omitted). The balance-of-equities and public-interest factors "merge" where, like here, the Government is the opposing party. *Nken*, 556 U.S. at 435.

IV.
DISCUSSION

**A. Petitioner is Likely to Succeed on the Merits.**

    1. <u>Due Process Claim</u>

Petitioner argues that the Due Process Clause of the Fifth Amendment bars Respondents from re-detaining him without first providing him with a pre-deprivation hearing. Doc. 2 at ¶ 57. Courts analyze due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivations of that protected liberty interest accords with the Constitution. *See Ky. Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989).

        a. <u>Petitioner Possesses a Protected Liberty Interest.</u>

Turning to the first step—whether Petitioner possesses a protected liberty interest—this Court finds that there is a substantial likelihood that Petitioner will be able to show that he has a protected liberty interest in his release from immigration custody. Courts have resolved the issue of whether a conditional release rises to the level of a protected liberty interest by comparing the release in the case to the liberty interest in parole in *Morrissey v. Brewer*, 408 U.S. 471 (1972). *See Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010). Like the parole discussed in *Morrissey*, Petitioner's release from immigration custody enabled "him to do a wide range of things," including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." 408 U.S. at 482. Indeed, Petitioner was released from immigration custody two and a half years ago. Doc. 10 at ¶ 5. During this time, he married his wife, a U.S. citizen, and became a stepfather to two U.S. citizen children. *Id.* at ¶ 7. He provides financial and emotional support to his family, including to his mother-in-law who is undergoing dialysis treatment. *Id.* These relationships and obligations are the very kind contemplated in

*Morrissey* and demonstrate the liberty interest accrued by Petitioner during his more than two years on release.

        b. <u>A Pre-Deprivation Hearing Was Required Before Petitioner Was Re-Detained.</u>

Having found that there is a substantial likelihood that Petitioner will be able to show a protected liberty interest, the Court examines what process is necessary to ensure any deprivation of that protected interest accords with the Constitution. To make this determination, the Court considers the three factors outlined in *Mathews v. Eldridge*: 1) "the private interest that will be affected by the official action," 2) "the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and 3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976).

Turning to the first *Mathews* factor, the Court finds there is a substantial likelihood that Petitioner can show that he has a significant private interest in remaining free from detention after being released from immigration custody. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the [Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). As mentioned previously, Petitioner was out of immigration custody for over two years before being re-detained by ICE, during which time his interest in release grew even stronger as he married and developed family ties. His private interest in freedom from detention is therefore substantial. *See* Doc. 2 at ¶ 8.

With respect to the second *Mathews* factor, the Court also finds that there is a substantial likelihood that Petitioner can show that the risk of erroneous deprivation in this case is considerable, particularly here where ICE previously released Petitioner and has not shown a

6

change in circumstances or otherwise explained why re-detention is necessary. *See id.* at ¶ 7. As Petitioner suggests, *see id.* at ¶¶ 8, 59, a pre-deprivation hearing would likely attenuate this risk, but Respondents provided no such hearing to Petitioner before re-detaining him.

Finally, the Court finds there is a substantial likelihood that Petitioner can show that the third *Mathews* factor favors him as well. Respondents' interest in placing Petitioner in detention absent some reason for doing so is low. And requiring a pre-deprivation hearing does not undermine the Government's interest in enforcing its immigration laws; it merely ensures its enforcement tactics comport with due process. Moreover, the effort and costs of providing Petitioner this simple procedural safeguard is minimal.

On balance, the Court finds that there is a substantial likelihood that Petitioner, under the three *Mathews* factors, can show that he was entitled to a pre-deprivation hearing prior to being re-detained. Having found that there is a substantial likelihood that Petitioner can show a protected liberty interest, and that due process requires a pre-deprivation hearing, the Court finds that Petitioner has established a substantial likelihood of success on the merits of his due process claim.

2. <u>Violation of the INA</u>

Petitioner also argues that Respondents violated the INA by detaining him without the possibility of a bond hearing. Doc. 2 at ¶¶ 52-53. Petitioner argues that Respondents have erroneously classified him under 8 U.S.C. § 1225 and subjected him to mandatory detention, when he should be classified under the discretionary detention provisions of § 1226. Doc. 2 at ¶¶ 49-54.

This Court finds Petitioner has established a substantial likelihood of success on the merits of this claim as well. At the time that Petitioner was re-detained, he was not seeking admission to the United States. Petitioner had also not just arrived, or even recently arrived, to the United States. He had been in the United States for over two years, after being released on an Order of Release

7

on Recognizance. The Order of Release itself was issued pursuant to § 1226, confirming Petitioner's proper classification. *See* Doc. 2-3.

**B. Petitioner Will Face Irreparable Harm Without Injunctive Relief.**

The Court next finds that Petitioner has demonstrated that his detention has caused and will continue to cause irreparable harm. As the Supreme Court has recognized, incarceration "has a detrimental impact on the individual" because it, among other things, "disrupts family life." *Barker v. Wingo*, 407 U.S. 514, 532 (1972). Indeed, Petitioner has shown that his wife, stepdaughters, and extended family have suffered substantial financial, emotional, psychological, and mental harm in his absence. Doc. 10 at ¶ 13; *see also* Docs. 10-3, 10-5, 10-6, 10-7.

Moreover, it is well-established that "the infringement of a constitutional right" is enough on its own to show irreparable harm. *Free the Nipple-Fort Collins*, 916 F.3d at 805. Because the Court has found a substantial likelihood of success on Petitioner's due process claim, "no further showing of irreparable injury" is necessary. *Id.*

**C. The Balance of Equities and Public Interest Weigh in Petitioner's Favor.**

When the Government is the party opposing the temporary restraining order, the balance of equities and public interest merge. *Nken*, 556 U.S. at 435. The Court finds that the balance of equities and public interest weigh in Petitioner's favor here. Any burden on Respondents to release Petitioner from custody and provide a pre-deprivation hearing is minimal compared to the harm that Petitioner and his family suffer due to his continued detention. It is also not in the public's interest to allow unexplained and/or unlawful detention.

## V.
## CONCLUSION

In conclusion, the Court finds that the requirements for issuing a temporary restraining order are met. The Court also finds that the status quo ante is the position that Petitioner was in prior to his re-detention by ICE. Accordingly, **IT IS ORDERED** that:

1. Petitioner's request for a temporary restraining order is **GRANTED**;

2. Respondents are **ORDERED** to release Petitioner within twenty-four hours of this Order;

3. Respondents are **RESTRAINED** from re-detaining Petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation hearing before a neutral arbiter, that Petitioner is a danger to his community or a flight risk;

4. The Court will consolidate the request for a preliminary injunction with consideration of the merits of the habeas petition pursuant to FED. R. CIV. P. 65(a)(2); and

5. This order, for good cause shown, shall remain in effect until resolution of the merits of the habeas petition. *See* FED. R. CIV. P. 65(b)(2).

**IT IS SO ORDERED.**

_____
**HONORABLE DAVID HERRERA URIAS**
**UNITED STATES DISTRICT JUDGE**